**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LAURA LAVECK,

                    Plaintiff,

            - v -                                          Civ. No. 5:10-CV-1355
                                                                      (RFT)

MICHAEL J. ASTRUE, *Commissioner of Social*
*Security*,

                    Defendant.

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION                  CHRISTOPHER J. BRACKETT, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM DECISION and ORDER**

        In this action, Plaintiff Laura Laveck moves, pursuant to 42 U.S.C. § 405(g), for review of a

decision by the Commissioner of Social Security denying her application for Supplemental Security

Income (SSI).[1]  Based upon the following discussion, the Commissioner's decision denying Social

---

        [1] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed
when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard.
Dkt. Nos. 12, Pl.'s Br., & 13, Def.'s Br.  The parties, with the approval of the Honorable Mae A. D'Agostino, United States
District Judge, consented to the undersigned presiding over this matter pursuant to 28 U.S.C. § 636(c) and Federal Rule of
Civil Procedure 73.  Dkt. No. 15.

Security benefits is **reversed** and this case is **remanded** for further development of the record.

## I. BACKGROUND

Laura Ann Laveck, born on November 4, 1981, protectively filed for SSI benefits on May 23, 2007, alleging disability due to back problems, left ovary removal, anxiety, anxiety attacks, learning disability, degenerative disc disease, and depression. Dkt. No. 9, Admin. Transcript [hereinafter "Tr."] at pp. 104 & 147 . Laveck had filed a prior disability application that was denied on January 19, 2007.[2] *Id*. at pp. 111-14, 143, & 212. In her May 2007 disability application, Laveck asserts that her disability began on August 1, 2006. *Id*. at pp. 104 & 212. Laveck stopped attending school upon completion of the eighth grade. Having been held back several times, she was eighteen years old when she finished eighth grade. *Id*. at pp. 35-37 & 121. She previously worked as a cashier at a gas station and a housekeeper. *Id*. at p. 148.

On October 17, 2007, Laveck's application was initially denied. *Id*. at pp. 52 & 56-63. A Hearing was held on September 22, 2009 (Tr. at pp. 27-51), before Administrative Law Judge (ALJ) Thomas P. Tielens who, on November 5, 2009, issued a decision finding Laveck not disabled (Tr. at pp. 12-26). On October 13, 2010, after considering further information, the Appeals Council denied Laveck's request to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1-4. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

---

[2] The Administrative Law Judge (ALJ) denied Plaintiff's request to reopen the prior disability application, however, the records associated with the prior filing were made a part of this record and were considered by the ALJ in his decision denying benefits. Tr. at pp. 12-26, 111-41, & 233-94.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

The SSI program, 42 U.S.C. § 1381, *et seq*., is a federal program providing benefits to needy aged, blind, or disabled individuals who meet the statutory income and resource limitations. 20 C.F.R. § 416.110. The SSI program was designed to replace the former federally assisted state welfare programs for the aged, blind, or disabled. *Id*. While the SSI program has special eligibility

requirements that relate to establishing need,[3] the requirements for establishing disability, found at 42

U.S.C. § 1382c, are identical to the requirements under Title II of the Social Security Act for

entitlement to disability insurance benefits. *See* 42 U.S.C. § 423(d). Therefore, the vast case law

interpreting the disability provisions under Title II may be relied upon in this case. *See Donato v. Sec'y*

*of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (noting that decisions under Titles

II and XVI are cited interchangeably).

To be considered disabled within the meaning of the Social Security Act, a plaintiff must

establish an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity

as to prevent engagement in any kind of substantial gainful work which exists in the national economy.

*Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis

set forth in the Social Security Administration Regulations. 20 C.F.R. § 416.920. At Step One, the

Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v.*

*Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity,

he or she is not disabled and the inquiry ends. 20 C.F.R. § 416.920(b). If the claimant is not engaged

in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the

claimant suffers from a severe impairment that significantly limits his or her physical or mental ability

to do basic work activities. *Id.* at § 416.920(c). If the claimant suffers from a severe impairment, the

_____

[3] SSI benefits may not be paid unless the claimant meets the income and resource requirements of 42 U.S.C. §§ 1382a, 1382b, and 1382c(a)(3)(A).

Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[4] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 416.920(g); *see also New York v. Sullivan*, 906

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

F.2d 910, 913 (2d Cir. 1990).

## C. ALJ Tielens's Decision

Laveck was the only witness to testify at the ALJ Hearing. Tr. at pp. 27-51. In addition to such testimony, the ALJ had Laveck's medical records consisting of treatment reports and opinions from various treating, examining, and non-examining physicians. Using the five-step disability evaluation, ALJ Tielens found that: 1) Laveck had not engaged in any substantial gainful activity since May 23, 2007, the date she applied for disability benefits; 2) she has severe medically determinable impairments, namely degenerative disc disease at L5-S1 with mild facet degenerative changes and a slight bulging and/or protruding disc at L4-L5, depressive disorder-NOS, and panic disorder; however, her ovarian cyst removal, pain in teeth, and bronchitis were not deemed severe impairments; 3) her severe impairments did not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4, specifically Listings 1.04, 12.04, and 12.06; 4) she retains the residual functional capacity to perform the full range of light work, and cannot perform her past work as a home health care aide; and 5) considering her age, education, work experience, RFC, and the Medical Vocational Guidelines, ALJ Tielens concluded that there was work available in the national and local economies which Plaintiff could perform. *Id*. at pp. 12-26.

## D. Plaintiff's Contentions

Plaintiff asserts that the ALJ committed several legal errors in his decision and that his finding of no disability is not supported by substantial evidence in the record. Specifically, Plaintiff claims that the ALJ committed reversible error in the following ways: 1) at Step Three, the ALJ erroneously found that Plaintiff did not meet Listing 1.04, and failed to fully develop the record for a proper assessment of Listing 12.05; 2) improperly applied the Treating Physician Rule and incorrectly determined she had

the RFC to complete the full range of light work; 4) improperly assessed Laveck's credibility; and 5) failed to elicit the testimony of a vocational expert (VE). *See generally* Pl.'s Br.

## 1. Step Three – The Listings

Laveck claims that the ALJ erred at Step Three when he failed to find that her severe physical impairments met or medically equaled Listing 1.04 (disorders of the spine). Pl.'s Br. at pp. 15-17. She also asserts that the ALJ failed to properly develop the record by ordering a consultative intelligence evaluation so that he could properly assess whether she met Listing 12.05 (mental retardation). *Id.* at p. 13. We disagree with the former contention, but agree with the latter.

At Step Three of the sequential disability evaluation, the ALJ must determine whether the claimant's conditions meet or medically equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity[.]" 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii) & (d).

The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Zwick v. Apfel*, 1998 WL 426800, at \*6 (S.D.N.Y. July 27, 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. at 530; 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such

impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. at 530. To make this showing, the claimant

must present medical findings equal in severity to all requirements which are supported by medically

acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926.

To meet Listing 1.04, Plaintiff must show evidence of a "[d]isorder[] of the spine (e.g.,

herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

disease, facet arthritis, vertebral fracture), resulting in a compromise of a nerve root . . . or the spinal

cord. . . . [w]ith:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of
> pain, limitation of motion of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A).

The Court adopts the Commissioner's analysis on this point and agrees that the objective

medical evidence supports the finding that Plaintiff does not meet the criteria of Listing 1.04(A). First,

there is no evidence that Plaintiff's back impairment resulted in motor loss accompanied by sensory

or reflex loss. Upon examination, Plaintiff has exhibited normal reflexes and sensation in her lower

extremities and her muscle strength has been full. *Id*. at pp. 252-54, 263, 302, 307, 310, 337, 356, 385,

392, 395, & 402. Furthermore, Plaintiff has not had positive straight leg raise tests in both the seated

and supine positions, as required by the Listings. *Id*. at pp. 253, 254, 255, 302, 385, & 402.

Accordingly, Plaintiff fails to meet her burden of establishing that her back impairment met a Listed

impairment.

Next we address Plaintiff's claim that the ALJ failed to fully develop the record with regard to

her intellectual functioning and the effect this failure to act had upon his assessment at Step Three, and

possibly the rest of the sequential disability evaluation. Plaintiff asserts that evidence in the record

suggests she has a cognitive disorder, thus triggering the ALJ's duty to develop the record with regard to this disorder and order a consultative intelligence exam. Plaintiff proclaims that without a full record, the ALJ could not properly assess whether she met the requirements for Listing 12.05.

In light of the non-adversarial nature of the administrative process, the ALJ has a duty to develop the record even when the claimant is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); 20 C.F.R. § 416.912(d). The Regulations provide that the decision to order consultative examinations is within the Commissioner's discretion. According to the Regulations, a consultative examination may be warranted where the record does not contain sufficient clinical findings, laboratory tests, diagnosis, and prognosis necessary to assess a claim. 20 C.F.R. § 416.919a(b). Consultative examinations may also be warranted where there is a conflict or inconsistency in the record. *Id*. However, where the record contains sufficient information on which to base a decision, a consultative examination is not warranted. *Hall ex rel. M.M. v. Astrue*, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

According to Laveck, when she attended school, she was in regular education classes but received extra help in reading and math labs because she was "a slow learner." Tr. at p. 35. She was held back for several school years (passing from fifth to sixth grade solely because of her age), and ultimately attained an education through the eighth grade. *Id*. at pp. 35, 37, 152, 256, & 313. At that time, she was living with her aunt and uncle in Phoenix. *Id*. at p. 36. After finishing eighth grade, she went back home to visit with her parents and never went back to school; she was approximately eighteen years old and instead began to work. *Id*. at pp. 36-37 & 121.

In both applications for disability benefits, Laveck listed "anxiety attacks/learning dis[order]" and "anxiety and depression" amongst her various other reasons for seeking disability. *Id*. at pp. 116

& 147. Because Plaintiff claimed disability due in part to mental impairments, she received consultive psychiatric examinations. The first consultative psychiatric exam, which was conducted in conjunction with Laveck's prior SSI application, was performed on December 12, 2006, by Kristen Barry, Ph.D. *Id*. at pp. 256-60. In her Report, Dr. Barry assessed Laveck's cognitive/intellectual functioning to be in the low average range and stated that her general fund of information was appropriate to her experience. *Id*. at p. 258. Thereafter, she noted that Plaintiff appeared to be "a fairly intelligent individual with no significant learning delays" and diagnosed Plaintiff with anxiety disorder, NOS, and depressive disorder, NOS. *Id*. at p. 259. The second consultative psychiatric exam, performed in conjunction with the current SSI application, was completed approximately seven months later on July 18, 2007, by Jeanne Shapiro, Ph.D. *Id*. at pp. 313-17. Dr. Shapiro estimated Laveck's cognitive functioning to be in the borderline range and stated that her general fund of information appeared to be "somewhat limited." *Id*. at p. 315. In addition to listing other mental disorders, such as depressive disorder NOS and panic disorder, Dr. Shapiro noted that borderline intellectual functioning should be ruled out. *Id*. at p. 316. The record does not contain intelligence evaluations nor school records.

In his written opinion, the ALJ did not list learning disability nor borderline intellectual functioning as among Laveck's severe and non-severe impairments. In fact, it appears that the alleged learning disability was not a consideration at all in the ALJ's severity determination at Step Two. Similarly, at Step Three, Laveck's purported learning disability was not mentioned in the discussion wherein the ALJ assessed whether her severe impairments met or medically equaled a listed impairment. The first time the ALJ mentions Plaintiff's claim of a learning disability is on page six of his written opinion when, in assessing her RFC, he recites the impairments she listed as a basis for claiming disability. *Id*. at p. 20. Then, when assessing the impact Laveck's mental impairments had

*-10-*

on her RFC, the ALJ summarizes the findings by Drs. Barry and Shapiro and notes that the results of the two psychiatric consultative exams were "different." *Id*. at p. 22. No mention is made of either doctor's assessment of Laveck's low cognitive functioning, nor does the ALJ mention Dr. Shapiro's assessment with regard to ruling out a learning disorder. Later in the opinion, in explaining the weight given to various medical opinions, the ALJ gave "[s]ignificant weight" to Dr. Barry's examination "because of [her] programmatic expertise, and because [her] report[] [is] consistent with the medical evidence in the record," while Dr. Shapiro's opinion was given "reduced weight" because it is "not consistent with the longitudinal medical evidence." *Id*. at p. 25.

It is unclear why Dr. Barry's apparent expertise was elevated above that of Dr. Shapiro's. It is also unclear which part of Dr. Barry's assessment is being given greater weight as supported by the medical evidence. It is similarly unclear which part of Dr. Shapiro's assessment is unsupported by the medical evidence. Simply put, the ALJ failed to explain with specificity the conflicts between the two medical opinions as they relate to the rest of the medical record, and instead, he offered nothing more than conclusory statements. According to Listing 12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05. Plaintiff asserts that, because of the existence of severe physical impairments, she could possibly meet Listing 12.05(C), which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id*. at § 12.05(C). Indeed, as laid out above, there is scant medical evidence with regard to Laveck's cognitive abilities. Because of the absence of any evidence relating to this impairment, the ALJ should have ordered a consultative

intelligence exam. Without fully developing the record, the ALJ could not have effectively assessed whether Plaintiff met the requirements of Listing 12.05, and his failure to do so is reversible error.

In summation, the ALJ erred when he did not consider Plaintiff's learning disability at all stages of the disability analysis, when he failed to satisfactorily resolve the "different" results between Dr. Barry and Dr. Shapiro with specific citation to the record, and when he failed to order a consultative intelligence exam. In light of this analysis, we find it impossible to review the balance of errors claimed by the Plaintiff with regard to the ALJ's RFC analysis, application of the treating physician rule, assessment of Plaintiff's credibility, and whether a vocational expert should have been consulted. Accordingly, remand is appropriate for further development of the record. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)).

On remand, the Commissioner shall develop the record more fully with regard to Plaintiff's alleged learning disorder.[5] This should include, at the very least, obtaining school records and ordering a consultative intelligence exam. Upon receiving a fuller record, including records from St. Joseph's Comprehensive Psychiatric Emergency Program, *see supra* note 5, the ALJ should assess whether a vocational expert is needed and hold another hearing to fully develop testimony regarding Plaintiff's learning disability and its effects, if any, on her ability to work.

---

[5] We must note that Plaintiff also claimed that there were gaps in the medical record because not all of the records were obtained from St. Joseph's Comprehensive Psychiatric Emergency Program (CPEP). Pl.'s Br. at pp. 13 & 14-15. Though a little tough to parse, it appears that Plaintiff checked herself into CPEP in June 2007. The medical record contains many follow-up examinations conducted at St. Joseph's Hospital that discuss the incident that led her to check herself into this program, but it is unclear how long she stayed at this program and whether treatment notes even exist. According to an Emergency Department Nursing Record from St. Joseph's Hospital, dated June 16, 2007, Plaintiff complained of feeling anxious and depressed, went to CPEP and was told to go to the ER. Tr. at p. 509. Thus, it is possible that no treatment was provided at CPEP. Because we are remanding the case for further development of the record, the Commissioner shall also contact CPEP to obtain any medical records in its possession.

### III. CONCLUSION

**WHEREFORE,** it is hereby

**RECOMMENDED,** that the Commissioner's decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Date: September 28, 2012
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge